# United States Court of Appeals
## For the First Circuit

---

No. 99-2225

WAYNE ROSE AND DONNA ROSE, INDIVIDUALLY AND AS PARENTS AND
NATURAL GUARDIANS OF WAYNE ROSE, JR., A MINOR CHILD,

Plaintiffs, Appellants,

v.

BARRY YEAW, IN HIS OFFICIAL CAPACITY AS FINANCE DIRECTOR FOR
THE TOWN OF COVENTRY, ET AL.,

Defendants, Appellees.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. Ernest C. Torres, U.S. District Judge]

---

Before

Torruella, Chief Judge,
Bownes, Senior Circuit Judge,
and Lipez, Circuit Judge.

---

Melissa F. Weber for appellants.

Richard W. Jensen, with whom Carol A. Griffin, Stephen P.
Harten, and Morrison, Mahoney & Miller, LLP were on brief, for
appellees.

---

June 7, 2000

---

**LIPEZ, Circuit Judge**.  Individually and on behalf of their disabled son, Wayne Rose, Jr., Wayne and Donna Rose filed a complaint in the district court for the District of Rhode Island against the Coventry School Department and several Coventry Public School officials in both their individual and official capacities (collectively, the "School Department" or "Coventry") seeking compensatory and punitive damages and attorneys' fees.  The plaintiffs alleged violations of the Individuals with Disabilities Act ("IDEA"), 20 U.S.C. §§ 1400-1415, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, the Federal Civil Rights Act, 42 U.S.C. § 1983, the First and Fourteenth Amendments, and the Regulations of the Board of Regents for Elementary and Secondary Education Governing the Special Education of Students with Disabilities (the "Rhode Island regulations").  The case was referred to a magistrate judge, who recommended that the district court grant the defendants' motion for summary judgment based on the plaintiffs' failure to exhaust administrative remedies pursuant to IDEA, 20 U.S.C. §§ 1415(i)(2)(A), 1415(l).  The district court adopted this recommendation.  We affirm the district court's order.

## I.  Background

Drawing upon the thorough opinion of the magistrate judge, we set forth the relevant background. After Wayne Jr. entered the ninth grade at Coventry High School in November 1995, his asthma condition worsened. In response, the school changed air filters and cleaning procedures. Wayne Jr.'s condition persisted, and his physician informed the school that Wayne Jr. might require additional assistance because his asthma interfered with regular attendance. In December 1995, the school implemented an initial Individualized Educational Plan (the "Plan") providing home tutoring for Wayne Jr.'s asthma-related absences as an interim measure. In March 1996, the school completed its educational, psychological, and medical assessments and developed a second Individualized Education Plan, which provided accommodations such as home tutoring for asthma-related absences, extended time to complete assignments, and the relocation of Wayne Jr.'s classes to the new wing of the building, where he experienced fewer asthma problems. In May 1996 and August 1996, there were amendments to Wayne Jr.'s Plan that allowed him to take exams in a room where he experienced fewer asthma symptoms and granted him an extension until the end of the summer to complete his class work. Although Wayne Jr.'s parents agreed to the Plan and the amendments, they remained

concerned about whether these modifications would be an adequate long-term solution.

Wayne Jr. resumed school in the fall of 1996. His asthma problems persisted. In November, Wayne Jr.'s physician suggested that he attend a different high school. The School Department proposed placing Wayne Jr. at the Exeter-West Greenwich High School on a temporary basis while Wayne Jr. received a comprehensive reevaluation, including a psychological assessment. The plaintiffs objected to the psychological testing and rejected the proposal. On January 29, 1997, the plaintiffs requested a due process hearing before the Rhode Island Commissioner for the Department of Education pursuant to IDEA, 20 U.S.C. § 1415(f), alleging that Coventry had improperly made the psychological testing a prerequisite to Wayne Jr.'s transfer. Coventry also requested a hearing.

In March 1997, Coventry sent the plaintiffs an amended Plan allowing for Wayne Jr.'s transfer to Exeter-West Greenwich High School. The amended Plan provided for a transition period at Exeter-West Greenwich High School during which Wayne Jr. would attend regular classes and receive tutoring. Meanwhile, the School Department would conduct air-quality tests at Coventry High School. The Plan required Wayne Jr. and his parents to commit to his attendance of classes and completion of

-4-

assignments. After the ten-week transition period, the Coventry School Department's multi-disciplinary team and the Exeter-West Greenwich High School staff would evaluate the placement. If the team concluded that the transfer was successful, the School Department would reconsider the need for a psychological assessment. The plaintiffs agreed to the amended Plan and both sides withdrew their request for a due process hearing.

After entering the Exeter-West Greenwich High School in April 1997, Wayne Jr. experienced academic difficulty. Meanwhile, the results of the air tests at Coventry High School showed that the air quality was normal. The multi-disciplinary team recommended that Wayne Jr. return to Coventry High School for the eleventh grade and remain closely monitored. Plaintiffs objected to the team's recommendation, maintaining that Wayne Jr. had not received the full amount of tutoring specified in his Plan. After further meetings failed to produce a satisfactory resolution, the plaintiffs again requested a due process hearing before the Rhode Island Commissioner for the Department of Education, alleging that Coventry High School had not followed the terms of the amended Plan.

On August 19, 1997, the School Department offered to place Wayne Jr. at the Exeter-West Greenwich High School for the eleventh grade and withdraw the request for a psychological

assessment.  A few days later, however, the Town of Greenwich informed Coventry that the Plaintiffs had moved to East Greenwich and Wayne Jr. would begin the school year as a special education student at East Greenwich High School (not to be confused with Exeter-West Greenwich High School, the site of Wayne Jr.'s temporary placement).  On September 16, 1997, Coventry and the plaintiffs signed a stipulation withdrawing the pending petition for a due process hearing.

On October 17, 1997, Wayne and Donna Rose filed their lawsuit, which was terminated by the court's entry of summary judgment on the basis of the plaintiffs' failure to exhaust administrative remedies.  On this appeal, we review the grant of summary judgment de novo, see EEOC v. Amego, Inc., 110 F.3d 135, 141 (1st Cir. 1997), and draw all reasonable inferences in favor of the nonmoving party, see Champagne v. Servistar Corp., 138 F.3d 7, 8 (1st Cir. 1998).

## II.  IDEA and the Exhaustion Requirement

IDEA is a comprehensive education statute which seeks to ensure that children with disabilities receive "a free appropriate public education . . . designed to meet their unique needs."  20 U.S.C. § 1400(d)(1)(A).  IDEA requires state or local agencies receiving federal funds under subchapter II of IDEA to "establish and maintain procedures . . . to ensure that

children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of free appropriate public education by such agencies." Id. § 1415(a); see also Honig v. Doe, 484 U.S. 305, 310-12 (1988). If parents or guardians believe that the state or local agencies are not performing properly, they may present a complaint "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." Id. § 1415(b)(6). A parent who files a complaint has the right to an "impartial due process hearing" conducted by either the state or local educational agency. Id. § 1415(f)(1).[1]

If the complainant remains dissatisfied after a due process hearing, he or she may file a civil action in state or federal court. See id. § 1415(i)(2)(A). Before filing suit, however, IDEA mandates that plaintiffs exhaust administrative

[1]IDEA mandates specific procedures for the due process hearing. All parties have the right to present evidence and to confront, cross-examine, and compel the attendance of witnesses; the right to be accompanied and advised by counsel and by individuals with special knowledge or training with respect to the problems of children with disabilities; the right to a written, or at the option of the parents, electronic verbatim record of such hearing; and the right to a written or, at the option of the parents, electronic findings of fact and decisions. See 20 U.S.C. § 1415(h). The hearing officer may not be an employee of the state or local educational agency involved in the care or education of the disabled child. See id. § 1415(f)(3).

remedies through the due process hearing.  This requirement applies even when the suit is brought pursuant to a different statute so long as the party is seeking relief that is available under subchapter II of IDEA.  Section 1415(*l*) states:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

The purpose of exhaustion is to "enable[] the agency to develop a factual record, to apply its expertise to the problem, to exercise its discretion, and to correct its own mistakes, and is credited with promoting accuracy, efficiency, agency autonomy, and judicial economy." Christopher W. v. Portsmouth Sch. Comm., 877 F.2d 1089, 1094 (1st Cir. 1989).

The scope of the due process hearing is broad, encompassing "complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child."  Id. § 1415(b)(6).  The plaintiffs alleged

discrimination by the School Department against Wayne Rose, Jr., because it failed to ensure appropriate accommodation of his asthma condition at both Coventry High School and Exeter-West Greenwich High School, conditioned Wayne Jr.'s placement at Exeter-West Greenwich High School on consent to a psychological evaluation, retaliated against Wayne Jr. in response to the Roses' efforts to enforce his educational rights, and generally failed to implement his Plan. These complaints relate unmistakably to the evaluation and educational placement of Wayne Rose, Jr., in the Coventry school system and to the provision of a free appropriate education there. Absent some exception, these claims are subject to the IDEA exhaustion requirement.

### III. Exceptions to the Exhaustion Requirement

The plaintiffs invoke exceptions to the IDEA exhaustion requirement based on the futility of exhaustion and the potential for severe harm to the litigant. When Congress adopted the predecessor statute to IDEA, Senator Williams warned that "exhaustion of the administrative procedures established under this part should not be required for any individual complainant filing a judicial action in cases where such exhaustion would be futile either as a legal or practical matter." Christopher W., 877 F.2d at 1094 (quoting 121 Cong.

Rec. 37416 (1975)).  Legal doctrine is consistent with this warning.  A plaintiff does not have to exhaust administrative remedies if she can show that the agency's adoption of an unlawful general policy would make resort to the agency futile, or that the administrative remedies afforded by the process are inadequate given the relief sought.  See id.  Similarly, exhaustion is not required where the agency has prevented the litigant from pursuing the administrative process.  See Pihl v. Massachusetts Dep't of Educ., 9 F.3d 184, 190-91 (1st Cir. 1993).

In addition to the exception for futility, courts may also exercise discretion if exhaustion "will not only waste resources but also work severe harm upon a litigant."  Ezratty v. Commonwealth of Puerto Rico, 648 F.2d 770, 774 (1st Cir. 1981).  Again, the legal doctrine is consistent with the legislative history, which warns that exhaustion is not necessary when "an emergency situation exists (e.g., the failure to take immediate action will adversely affect a child's mental or physical health)."  Komninos v. Upper Saddle River Bd. of Educ., 13 F.3d 775, 778 (3d Cir. 1994) (quoting H.R. Rep. No. 99-296, at 7 (1985)).

Frankly, we have found it difficult to understand the precise nature of the plaintiffs' claims to an exception to the

exhaustion requirement.  As best we can divine, the plaintiffs make three arguments.  First, as a matter of law, they should not have to exhaust administrative remedies because they were the "prevailing party" in an agreement with the defendant School Department which resulted in an amended Plan in April 1997. Second, it was futile to pursue exhaustion because the school department withdrew from a due process hearing on two separate occasions.  Third, exhaustion would have caused irreparable harm to Wayne Jr.  The burden of demonstrating an exception from the exhaustion requirement falls on the party seeking to avoid the requirement.[2]  See Honig, 484 U.S. at 327.  The plaintiffs' claims are unconvincing.

A.  Prevailing Party

This argument is the strangest of the three, and hence the most difficult to understand.  The prevailing party concept relates to claims for attorneys' fees when statutes provide for them.  Not surprisingly, IDEA refers to the concept of a prevailing party only in its provision authorizing an award of

---

[2]In a perfunctory manner, the plaintiffs  suggest in their brief that exhaustion was futile because they could not recover monetary damages, the sole relief requested, through a due process hearing.  We do not address this complex issue under "the settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."  See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

attorneys' fees to the parents of a disabled child who is the prevailing party. See 20 U.S.C. § 1415(i)(3)(b). Borrowing the language of the prevailing party provision but ignoring the usual legal significance of the phrase, the Roses seem to argue the following logic: 1) they wanted their son placed at the Exeter-West Greenwich High School; 2) they "prevailed" in this desire when Coventry agreed to this request and amended the Plan for Wayne Jr.; 3) having prevailed, there was no further remedy available to them through IDEA's due process hearing when the School Department said Wayne Jr. should return to the Coventry High School; and 4) they should therefore be allowed to go directly to court to seek damages for the failure of the School Department to abide by the agreement reflected in the amended Plan.

The Roses offer no legal authority in support of their prevailing party argument. Without suggesting in any way that the argument has merit, we conclude that the argument fails because the Roses mischaracterize the nature of their agreement with the School District which resulted in the amended Plan of April 1997. That Plan provided for a temporary placement of Wayne Jr. at Exeter-West Greenwich High School, with the duration of the placement to be reevaluated based on Wayne Jr.'s academic performance and the results of air quality tests.

Under the Plan, Wayne Jr. remained classified as a Coventry High School student.

When the multi-disciplinary team recommended Wayne Jr.'s return to Coventry High School based on their assessment of his academic performance and the results of the air quality tests, the School Department did not violate any agreement by engaging in such a reevaluation. Moreover, such reevaluation is consistent with the framework of IDEA itself which requires reevaluation of the disabled child, "if conditions warrant a reevaluation or if the child's parent or teacher requests a reevaluation, . . . ." Id. § 1414(a)(2)(A). If the Roses did not like the results of the reevaluation, they could do what they in fact did -- file a request for a due process hearing to challenge the reevaluation. Their decision to abandon that process does not entitle them to claim that the administrative process was futile.

B.  Withdrawal From the Due Process Hearings

Ignoring their own decisions, the plaintiffs argue that the defendants' withdrawal from the due process hearing on two different occasions rendered exhaustion futile. In fact, however, the plaintiffs and the School Department both withdrew from the due process proceedings. Both sides withdrew their first request for a due process hearing after the School

Department amended Wayne Jr.'s Plan to allow for temporary placement at Exeter-West Greenwich High School. The School Department and the plaintiffs then stipulated in writing to the withdrawal of the second petition for a due process hearing.

Moreover, at all times the plaintiffs retained the right to pursue a due process hearing despite the School Department's withdrawal of its own hearing requests. IDEA specifically grants parents the right to unilaterally initiate a due process hearing. See 20 U.S.C. § 1415(f)(1). The defendants' withdrawal of the request for a due process hearing did not render the administrative process futile.

C. Irreparable Harm

The plaintiffs claim that exhaustion of administrative remedies would have caused irreparable harm to Wayne Jr. in the sense that he would have experienced ill health effects and absences from school if forced to return to Coventry High School while the due process hearing was conducted. The exception for irreparable harm "is to be sparingly invoked." Komninos v. Upper Saddle River Bd. of Educ., 13 F.3d 775, 779 (3d Cir. 1994). Consistent with this principle, the Third Circuit has required plaintiffs to "provide affidavits from competent professionals along with other hard evidence that the child faces irreversible damage if the relief is not granted." Id.;

-14-

see also Koster v. Frederick County Bd. of Educ., 921 F. Supp. 1453, 1456 (D. Md. 1996) (refusing to grant an exception for irreparable harm where the plaintiffs provided no evidence that their disabled son would have been subject to severe harm from exhaustion of the administrative process).

The Roses failed to provide evidence that Wayne Jr. would have experienced severe harm if he returned to Coventry High School, despite the School Department's test results finding normal air quality at Coventry. The Roses also failed to demonstrate a likelihood that Wayne Jr. would have so many asthma-related absences while awaiting the due process hearing as to cause "irreversible damage" to either his health or education. They could not succeed with their demand for an exhaustion exception without such evidence.

## IV. Conclusion

Because the plaintiffs failed to exhaust their administrative remedies, the district court correctly granted the defendants' motion for summary judgment.

**Affirmed.**